[Cite as *State v. Smith*, 2020-Ohio-3235.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-09-104 |
| | : | O P I N I O N |
| - vs - | | 6/8/2020 |
| | : | |
| JESSIE L. SMITH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35117

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Jeffrey W. Stueve, 530 North Broadway Street, Lebanon, Ohio 45036, for appellant

**PIPER, J.**

{¶1} Appellant, Jessie Smith, appeals a decision of the Warren County Court of Common Pleas revoking his community control.

{¶2} Smith was previously convicted of gross sexual imposition in a different county, and was thus required to notify the Sheriff's Office of a change in his address. Smith left his residence and failed to report the change in address as required. Smith pled guilty

to failure to report his address change and the trial court sentenced Smith to community control.

{¶3} As a term of community control, the trial court ordered that Smith successfully complete a 180-day inpatient treatment program at River City Correctional Center. River City, a community-based correctional facility, offered Smith cognitive behavioral therapy, substance abuse treatment, as well as sex offender treatment.

{¶4} River City reported that Smith was discharged from its program for multiple violations of its rules. Smith was then arrested, and his community control violation was reported to the court. The trial court held a hearing, revoked Smith's community control, and imposed a 30-month sentence. Smith now appeals the revocation of his community control, raising the following assignment of error:

{¶5} THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLANT WAS NO LONGER AMENABLE TO COMMUNITY CONTROL.

{¶6} Smith argues in his assignment of error that the trial court erred in revoking his community control.

{¶7} A trial court's decision revoking community control is reversible only upon a showing of abuse of discretion. *State v. Bishop*, 12th Dist. Clermont No. CA2010-08-054, 2011-Ohio-3429, ¶ 11. An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*

{¶8} "'A trial court does not abuse its discretion by revoking an offender's community control where the violation in question was one over which the offender had control.'" *State v. Noonan*, 12th Dist. Butler Nos. CA2018-10-203 and CA2018-10-204, 2019-Ohio-2960, ¶ 19 quoting *State v. Tranter*, 12th Dist. Clermont No. CA2000-05-035, 2001 Ohio App. LEXIS 1413, *11 (Mar. 26 2001). Nor does the trial court abuse its discretion when the offender is on notice that successful participation in a particular program

- 2 -

is a requirement of the community control and the offender is unsuccessfully discharged from the program. *State v. Baldwin*, 12th Dist. Clermont Nos. CA2015-10-082 and CA2015-10-086, 2016-Ohio-5476, ¶ 10. The community control privilege rests upon the defendant's compliance with the conditions and any violation of those conditions may properly be used to revoke the privilege. *Noonan* at 20.

{¶9} After reviewing the record, we find the trial court did not abuse its discretion in revoking Smith's community control. The record is undisputed that successful completion of the River City treatment plan was a term of Smith's community control and that he failed to complete the treatment. Smith counters that the trial court should have continued him on community control because he stayed approximately half of the days it takes to complete the program and his rule violations were due to safety concerns.[1] However, the record demonstrates that Smith did not complete the treatment plan as ordered because of his own choices and improper behavior.

{¶10} During the hearing on Smith's community control violation, Smith's probation officer testified he discussed with Smith the obligation to successfully complete the program and that Smith was required to abide by River City's rules in order to maintain the terms of his community control. Smith's River City case manager testified that on the first day of orientation into the program, residents are provided a handbook with the rules and must pass a test on the rules before they can transition from orientation to treatment. Thus, Smith was aware of the rules he was required to follow, as well as what repercussions were possible.

{¶11} Smith's probation officer testified that he received notice from River City that Smith was discharged from the program because of multiple violations of the rules.

---

1. Smith testified at the violation hearing that be believed he was in danger once the other residents learned that he had been convicted of gross sexual imposition involving a six-year-old child.

- 3 -

According to River City's discharge report, Smith committed four Level Four violations, which is the most serious level, one Level Three violation, and one Level Two violation. The Level Four violations included repeated noncompliance with staff instructions, immediate threat of violence for fighting with another resident, spraying chemicals at another resident during housekeeping, and stealing food from the kitchen to give to other residents. The Level Three incident included Smith using the phone when he was not privileged to do so.

{¶12} In addition to the enumerated violations above, Smith's case manager, his clinical supervisor, and the River City executive director reported that Smith was unable to adjust to life around other residents, including multiple instances of instigating turmoil between himself and others and then refusing to acknowledge his responsibility for the negative interactions. Smith also exhibited attention seeking and demanding behaviors, especially when he would not "get a desired outcome," including acting out until he was removed from shared space with other residents and placed in segregation. Once in segregation, however, Smith continued to violate the rules, including flooding his area by stopping up the sink and letting the water run.

{¶13} Regarding Smith's claims that he was unsafe at River City, the record demonstrates otherwise. When Smith complained of other residents and suggested his safety was compromised, River City staff investigated the accusations and offered various means of addressing Smith's perceived threats to his safety. These methods included offering to change Smith's housing location. However, Smith was never appeased with the suggestions and River City's attempts to focus on treatment ended with Smith making new demands on what his requirements were to stay in the program.

{¶14} The report also addressed that Smith was uncooperative during treatment, including shifting discussions away from "criminogenic areas" to what he did not like about

the program. Smith's case manager testified that Smith would not participate in the programs at times, instead only stating that the program was not working for him. When clinicians attempted to work with Smith to help him with his treatment, Smith would only make demands of them, rather than participate in treatment. The record clearly demonstrates that Smith failed to complete the required training and therapy sessions, which were a requirement of successful completion of River City's program.

{¶15} After reviewing the record, we find the trial court did not abuse its discretion in revoking Smith's community control. Smith's single assignment of error is, therefore, overruled.

{¶16} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.