[Cite as *State v. Motz*, 2020-Ohio-4356.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-10-109 |
| | : | O P I N I O N |
| - vs - | | 9/8/2020 |
| | : | |
| KYLE MOTZ, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33573

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Timothy J. McKenna, 125 East Court Street, Suite 950, Cincinnati, Ohio, 45202, for appellant

**HENDRICKSON, P.J.**

{¶1} Appellant, Kyle Motz, appeals the decision of the Warren County Court of Common Pleas revoking his community control and sentencing him to serve 18 months in prison. For the reasons discussed below, we affirm the trial court's decision.

{¶2} In December 2017, appellant pled guilty to one count of gross sexual imposition in violation of R.C. 2907.05, a felony of the fourth degree. In February 2018,

appellant was sentenced to five years of community control and classified as a Tier II sex offender. Pursuant to the terms of his community control, appellant was placed on electronically monitored supervision for 90 days, ordered to complete inpatient sex offender treatment at CCC, and ordered to have no contact with the victim or with the Little Miami Scenic Bike Trail. Appellant was advised that a violation of the terms of his community control could result in the imposition of a prison term of up to 18 months.

{¶3} On December 26, 2018, appellant's probation officer, Mathew Pierce, filed a report of a community control violation, alleging that appellant had downloaded and was in possession of a large amount of pornography on his cell phone. In January 2019, appellant pled guilty to the violation. The trial court continued appellant on community control but placed additional sanctions on him. Appellant was placed on electronically monitored curfew, ordered to complete 10 hours of community service, restricted from residing in a residence that had internet access, and prohibited from using a smartphone. Appellant was further ordered to increase his mental health treatment and comply with all assessment recommendations.

{¶4} On July 31, 2019, Pierce filed a second report of a community control violation against appellant, alleging that appellant had violated Rule 13 of the terms of his community control by being unsuccessfully terminated from the sex offender treatment program he had been attending. Appellant denied violating the terms of his community control at a preliminary hearing. A final violation hearing was held on October 14, 2019. At that time the court heard testimony from Amy Bidinger, the Associate Director of Court Services for the Warren County Probation Department, from Gary Key, the psychotherapist who had been treating appellant within the sex offender treatment program, and from appellant.

{¶5} Bidinger testified that she is Pierce's supervisor and that she is aware of Pierce's caseload. Bidinger explained that appellant was placed under Pierce's supervision

on February 13, 2018, and appellant was required to comply with certain rules and conditions of community control. Pursuant to Rule 13 of the Rules and Conditions of his community control, appellant "agree[d] to follow all rules and regulations of treatment facilities or programs of any type in which [he was] placed or ordered to attend while under the jurisdiction of the Court, and/or Ohio Department of Rehabilitation and Correction." Bidinger explained appellant violated this rule when he was unsuccessfully terminated from treatment in a sex offender group ran by Key at the Deerfield Township Family Counseling Center near the end of July 2019.

{¶6} In a letter dated August 12, 2019, Key informed Pierce that appellant's unsuccessful termination was a result of several incidents, including appellant constantly being late for appointments, missing appointments, "consistently ma[king] passive-aggressive attempts to evade Group Therapy," and being dismissive of a female therapist. Key testified about these events at the final hearing, stating that appellant missing a July 26, 2019 group meeting in order to get new tires on his vehicle was "the straw that broke the camel's back." According to Key, "[t]here was a build up of undisciplined, irresponsible, inappropriate, manipulative behaviors on [appellant's] part, even since he started at our facility."

{¶7} Key explained that when attempting to schedule appellant's initial screening interview in order to start appellant's treatment, appellant scheduled and cancelled on three separate occasions. To Key, this illustrated a lack of investment and motivation for treatment. When appellant began attending group sessions, appellant often showed up tardy for the sessions. Then, on June 21, 2019, appellant called minutes before a group session was scheduled to begin in order to inform his therapist that he would not be able to attend due to the death of his mother. However, appellant's mother had passed away four days prior to the group session and appellant waited until the last possible moment to

provide notice of his absence. Appellant was again absent from group therapy on July 26, 2019. Appellant called Key's cell phone 45 minutes before the session was scheduled to begin to inform Key that he could not make it because he was getting new tires put on his vehicle. However, Key was not working that day and appellant did not call the treatment center to notify others of his absence.

{¶8} Key further testified that appellant had been in contact with other agencies regarding sex offender treatment in order to get out of his current treatment program. Key doubted appellant was seeking treatment elsewhere as a means of lowering his cost of treatment. Key explained that the probation department had paid for appellant's first four months of treatment as appellant was without steady employment. Key opined that appellant was seeking treatment elsewhere because "he was wanting to sabotage his own treatment, he was not invested after all this time, in his own treatment or committed to his treatment."

{¶9} Key was questioned by defense counsel about a grievance that appellant had filed against him in March 2019. Key denied that the grievance had any impact on his decision to terminate appellant from the sex offender program. Key testified that following appellant's grievance, he continued to treat appellant and his notes from May and June sessions contained some positive remarks about appellant. Key explained that if his decision to terminate appellant from treatment had been impacted by appellant's filing of the grievance, his monthly reports "would have been slanted, showing negative behavior, negative contact with other group members, etcetera, etcetera which [was] not the case."

{¶10} Following Key's testimony, appellant took the stand to explain that from the time he began sex offender treatment in February 2019 until the time he was terminated from the program at the end of July 2019, he had only missed two group sessions: one in June 2019 and one in July 2019. With respect to the June session, appellant explained

that he cancelled the session because his mother passed away four days prior and he "wasn't ready to communicate with the group * * * [as he] was still grieving." Appellant then explained that he missed the July session because he had to wait at Walmart for new tires to be put on his vehicle. Appellant claimed he had to have the tires replaced on that specific day because he did not feel safe driving the vehicle without the new tires. Appellant stated that when his appointment to have his new tires put on ran unexpectedly late, he contacted Key to let him know he would not be able to make the group therapy session. Appellant admitted he did not reach out to his probation officer to see if there was an alternative means of transportation available to get him to the therapy session.

{¶11} Appellant testified that he cooperated and participated in the required group sessions. He admitted to looking for other treatment providers but explained that he did so only in an effort to find a provider that accepted his insurance. Appellant stated that each therapy session cost $35 and was financially burdensome as he had been unemployed for several months. Although the probation department had covered the costs of some of his therapy sessions, appellant knew he would eventually be required to pay for the sessions.

{¶12} After considering the foregoing testimony, the trial court determined that appellant had violated the terms of his community control. The trial court revoked appellant's community control and sentenced him to 18 months in prison.

{¶13} Appellant appealed, raising three assignments of error for review.

{¶14} Assignment of Error No. 1:

{¶15} THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS RIGHTS BY NOT ALLOWING HIM TO CONFRONT AND CROSS EXAMINE HIS ACTUAL PROBATION OFFICER IN VIOLATION OF THE 14TH AMENDMENT AND FIRMLY ROOTED HEARSAY RULES.

{¶16} In his first assignment of error, appellant argues he was denied due process by not being able to confront and cross-examine Pierce, his "actual probation officer." Appellant contended Bidinger lacked personal knowledge and provided only hearsay information when testifying at the final violation hearing.

{¶17} As this court has previously recognized, "community control hearings are not subject to the rules of evidence, thus allowing for the admission of hearsay evidence." *State v. Schreiber*, 12th Dist. Warren No. CA2018-03-026, 2019-Ohio-2963, ¶ 20, citing *State v. Kincer*, 12th Dist. Clermont No. CA2005-07-059, 2006-Ohio-2249, ¶ 6. *See also* Evid.R. 101(C)(3). Nonetheless, revocation proceedings must comport with the requirements of due process. *State v. Koch*, 12th Dist. Warren No. CA2006-02-015, 2006-Ohio-6702, ¶ 19, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756 (1973). In *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593 (1972), the United States Supreme Court identified the "minimum requirements of due process" for parole revocation proceedings. The minimum requirements include

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* These requirements were later applied to probation violation proceedings; *see Gagnon* at 786; and were adopted by the Ohio Supreme Court in *State v. Miller*, 42 Ohio St.2d 102 (1975).

{¶18} In the present case, the fourth requirement is at issue. Appellant maintains that he was denied the right to confront and cross-examine adverse witnesses because

Pierce, the probation officer who filed the report of a probation violation, did not testify at the hearing. Appellant argues he was convicted based on hearsay evidence offered by Bidinger, as Bidinger was permitted to testify about the terms of appellant's probation and the group therapy sessions that appellant missed despite the fact that she had no personal knowledge of those events. Appellant relies on the Ohio Supreme Court's decision in *Miller* to support his position.

{¶19} In *Miller*, the defendant was charged with violating the terms of his probation by failing to report to the probation department for 15 months. *Miller* at 103. At the revocation hearing, the probation officer who had been assigned to supervise the defendant was no longer employed by the probation department and did not testify. *Id.* Instead, the state presented testimony from a different probation officer – one who had never personally spoken to the defendant and who based his testimony on probation department records. *Id.* The trial court found the defendant violated the terms of his probation and revoked his probation. *Id.* The appeals court reversed, finding appellant's constitutional rights to confrontation and cross-examination had been violated. *Id.* The state appealed to the Ohio Supreme Court, which ultimately sided with the defendant. The court held that

> [w]here at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable or that a specific finding was made of good cause for not allowing confrontation, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings.

*Miller* at the syllabus. Because the defendant's probation officer did not testify at the revocation hearing and no evidence was introduced that the probation officer was

unavailable, the supreme court found that the defendant was not provided the minimum due process requirements identified in *Morrisey*. *Id.* at 106.

{¶20} We find the present case distinguishable from *Miller*. Unlike the probation officer who testified in *Miller*, Bidinger had some familiarity with the terms of appellant's community control. Bidinger testified that she was Pierce's supervisor and that she had met with appellant and Pierce on a "couple of occasions." Bidinger, therefore, had personal knowledge about the terms of appellant's community control. Bidinger did not, however, have firsthand knowledge of the events leading to appellant's termination from his sex offender treatment program. Her testimony about these events was based on hearsay evidence. However, any error in the admission of her testimony about these events is harmless in light of Key's trial testimony.

{¶21} Key, the individual who terminated appellant from the sex offender treatment program, was present and subject to examination about the events that led to appellant's dismissal. Key had direct knowledge and was able to explain the underlying basis for appellant's discharge from the program. Although Pierce filed the report of a community control violation with the trial court, Pierce did not have personal knowledge of the basis for the violation. Pierce's report of a community control violation relied on the information obtained from Key. Pierce's report to the court stated, "On July 29, 2019, Court Services received a report from the defendant's treatment provider indicating that he had been unsuccessfully terminated from the program." Key, as appellant's "treatment provider," was the individual with personal knowledge of the events leading to appellant's discharge and Key provided this critical testimony at the hearing.

{¶22} As appellant had the opportunity to confront Key and challenge the basis for his termination from the treatment program, we find that appellant's due process rights were

not violated. Appellant's arguments are without merit and his first assignment of error is overruled.

{¶23} Assignment of Error No. 2:

{¶24} THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING A VIOLATION OF COMMUNITY CONTROL.

{¶25} In his second assignment of error, appellant argues the evidence failed to demonstrate that he violated the conditions of his community control. He contends there was no credible evidence of a violation presented at the revocation hearing as "the probation supervisor who testified had no personal knowledge * * * and the therapist who testified clearly was simply offended that [appellant] looked into seeing a different provider * * * due to financial costs."

{¶26} "A community control revocation hearing is not a criminal trial, so the state is not required to establish a violation of the terms of the community control 'beyond a reasonable doubt.'" *Kincer*, 2006-Ohio-2249 at ¶ 5, citing *State v. Payne*, 12th Dist. Warren No. CA2001-09-081, 2002-Ohio-1916. Rather, the state need only present substantial evidence of a violation of the defendant's community control. *Id.; State v. Pickett*, 12th Dist. Warren No. CA2014-09-115, 2015-Ohio-972, ¶ 13.

{¶27} A trial court's decision revoking community control will not be disturbed on appeal absent an abuse of discretion. *State v. Smith*, 12th Dist. Warren No. CA2019-09-014, 2020-Ohio-3235, ¶ 7, citing *State v. Bishop*, 12th Dist. Clermont No. CA2010-08-054, 2011-Ohio-3429, ¶ 11. An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*

{¶28} This court has previously determined that "'[a] trial court does not abuse its discretion by revoking an offender's community control where the violation in question was one over which the offender had control.'" *State v. Noonan*, 12th Dist. Butler Nos. CA2018-

10-203 and CA2018-10-204, 2019-Ohio-2960, ¶ 19, quoting *State v. Tranter*, 12th Dist. Clermont No. CA2000-05-035, 2001 Ohio App. LEXIS 1413, *11 (Mar. 26, 2001). We have further held that a trial court does not abuse its discretion in revoking community control "when the offender is on notice that successful participation in a particular program is a requirement of the community control and the offender is unsuccessfully discharged from the program." *Smith* at ¶ 8, citing *State v. Baldwin*, 12th Dist. Clermont Nos. CA2015-10-082 and CA2015-10-086, 2016-Ohio-5476, ¶ 10. The privilege of community control rests upon a defendant's compliance with the conditions of community control and any violation of those conditions may properly be used to revoke the privilege. *Id.*

{¶29} Having reviewed the record, we find that the trial court did not abuse its discretion in revoking appellant's community control as the state presented substantial evidence that appellant failed to comply with Rule 13 of the terms of his community control. Specifically, the state presented testimony that appellant was aware that he was required to follow all rules and regulations of the sex offender treatment program he was placed in, that appellant violated those rules, and that appellant was unsuccessfully discharged from the program as a result. Key testified about appellant's discharge from the program, explaining that appellant's July 26, 2019 unexcused absence from a group therapy session in order to get new tires on his vehicle was "the straw that broke the camel's back." According to Key, in addition to appellant missing the July 26 session in order to complete a personal errand, appellant also missed a session on June 21, 2019. With respect to the June 21, 2019 session, appellant called mere minutes before the session was scheduled to begin to inform his therapist of his absence in light of his mother's death. However, the record reflects that appellant's mother had passed away four days prior to the group session. Appellant, therefore, could have provided timely notice of his mother's death and

his forthcoming absence from group therapy, but instead chose to wait until the last possible moment.

{¶30} Appellant contends two missed sessions was not a sufficient basis to terminate his participation in the treatment program. However, appellant's failure to attend the group therapy sessions and his excuses for his absences must be viewed in the overall context of his performance in the sex offender treatment program. In addition to missing these sessions, testimony was also presented that appellant cancelled his first three initial screening interviews, was tardy for several sessions, was not progressing in his sessions, and was searching for alternative sex offender treatment programs. Key's testimony about these events sufficiently demonstrated appellant was uninterested and uninvested in receiving treatment.

{¶31} Appellant disputes the basis for his termination from the treatment program, arguing Key discharged him in retaliation for filing a grievance and for looking for a new treatment provider. Key's testimony, however refuted appellant's assertions. Key explained that the probation department had paid for appellant's sessions for four months while appellant was unemployed and that appellant's efforts to find a new program was nothing more than appellant "wanting to sabotage his own treatment, [as] he was not invested after all this time, in his own treatment or committed to his treatment." Furthermore, Key testified that the grievance appellant filed against him in March 2019 had no bearing on his determination to terminate appellant from the sex offender treatment program. Key stated that even after the grievance was filed, he continued to treat appellant and made some positive notes about appellant's participation in May and June sessions. The trial court was entitled to credit Key's testimony about the impact of the grievance over appellant's testimony. *See State v. Caulley*, 12th Dist. 2007-Ohio-220, ¶ 10-11 (noting that a trial court determines the credibility of the witnesses at a revocation proceeding).

{¶32} Accordingly, as substantial evidence was presented that appellant violated the terms of his community control by being unsuccessfully discharged from his sex offender treatment program, we find that the trial court did not abuse its discretion in revoking appellant's community control. Appellant's second assignment of error is overruled.

{¶33} Assignment of Error No. 3:

{¶34} THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDINGS AS TO SENTENCING.

{¶35} In his third assignment of error, appellant argues the record does not support the trial court's imposition of an 18-month prison term. Appellant contends the court failed to consider the factors set forth in R.C. 2929.12 and "failed to make the findings necessary to send [him] to prison."

{¶36} When an offender violates the conditions of his community control, "R.C. 2929.15(B) provides the trial court [with] a great deal of latitude in sentencing the offender." *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, ¶ 20. *See also State v. Jackson*, 150 Ohio St.3d 362, 2016-Ohio-8127, ¶ 13. Pursuant to R.C. 2929.15(B), a trial court has the option of imposing "a longer period of community control, a more restrictive community-control sanction, or a prison term of any length within the range of that available for the original offense, up to the maximum that the trial court specified at the first sentencing hearing." *Id.*[1]

{¶37} In the present case, the trial court elected to impose a prison term of 18 months on appellant for his violation of his community control. "We review the trial court's

---

1. R.C. 2929.15(B)(1)(c)(i) and (ii) places a limitation on the length of the prison term that can be imposed for a technical violation of an offender's community control if the underlying offense was a felony of the fourth or fifth degree. Appellant, whose underlying conviction was for a felony of the fourth degree, concedes the 180-day limitation set forth in R.C. 2919.15(B)(1)(c)(ii) does not apply.

sentencing decision for a community control violation under the standard of review set forth by R.C. 2953.08(G)(2)." *State v. Roberts*, 12th Dist. Butler No. CA2019-02-025, 2019-Ohio-4205, ¶ 5. *See also State v. Harris*, 12th Dist. Butler Nos. CA2017-01-003 and CA2017-05-071, 2017-Ohio-9090, ¶ 7. Pursuant to that statute, an appellate court does not review the sentencing court's decision for an abuse of discretion. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 10. Rather, R.C. 2953.08(G)(2) compels an appellate court to modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. A sentence is not clearly and convincingly contrary to law where the court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8; *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Thus, this court may "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

{¶38} In *State v. Glenn*, 12th Dist. Butler No. CA2019-05-088, 2020-Ohio-2880, ¶ 7, this court determined, for the first time, "[t]he R.C. 2929.11 purposes and principles of felony sentencing are inapplicable to the imposition of a penalty for a community control violation because R.C. 2929.11 does not apply to community control violations and R.C. 2929.15 does not require a trial court to consider the purposes and principles of felony sentencing when imposing a penalty for a community control violation." *Glenn*, however, failed to cite to any authority for the position that R.C. 2929.11 is inapplicable to a prison sentence imposed upon the revocation of community control. The *Glenn* opinion ignored precedent

from this court that applied R.C. 2953.08(G)(2) to an imposed sentence and noted the trial court's proper consideration of R.C. 2929.11 and 2929.12. *See, e.g., State v. Harris*, 12th Dist. Butler Nos. CA2017-01-003 and CA2017-05-071, 2017-Ohio-9090; *State v. Crank*, 12th Dist. Butler No. CA2015-05-093, 2016-Ohio-638. Numerous other appellate districts that have likewise analyzed a prison sentence imposed upon the revocation of community control have noted the trial court's proper consideration of R.C. 2929.11 and 2929.12 in imposing a sentence. *See, e.g., State v. Jackson*, 1st Dist. Hamilton No. C-180162, 2019-Ohio-1688, ¶ 5-8; *State v. Wooten*, 2d Dist. Champaign No. 2019-CA-8, 2020-Ohio-49, ¶ 29; *State v. Kegley*, 3d Dist. Crawford No. 3-16-06, 2016-Ohio-8467, ¶ 15-32; *State v. Hart*, 6th Dist. Lucas No. L-18-1204, 2019-Ohio-3926, ¶ 6-15; *State v. Howell,* 7th Dist. Mahoning No. 19 MA 0026, 2020-Ohio-3608, ¶ 12-18; *State v. Turner*, 9th Dist. Medina No. 16CA0011-M, 2017-Ohio-1314, ¶ 7-12; *State v. Wilburn*, 10th Dist. Franklin No. 17AP-602, 2018-Ohio-1917, ¶ 6-13; *State v. Mayle*, 11th Dist. Ashtabula No. 2017-A-0005, 2017-Ohio-8942, ¶ 27-31.

{¶39} Furthermore, precedent from the Ohio Supreme Court suggests that R.C. 2929.11 and R.C. 2929.12 are relevant considerations for a trial court imposing a sentence on a community control violation. Rather than look at the community control violation in a vacuum and automatically impose the sentence warned of at the initial sentencing hearing, the trial court is given great discretion in imposing a sentence on an offender. *Brooks*, 2004-Ohio-4746 at ¶ 20. If the court determines a prison sentence is necessary, the court can impose a prison term of any length within the range of that available for the original offense, up to the maximum that the trial court originally warned of at the first sentencing hearing. *Jackson*, 2016-Ohio-8127 at ¶ 13.

{¶40} When imposing a prison sentence on a violation, the supreme court has stated that the trial court must "consider both the seriousness of the original offense leading

to the imposition of community control and the gravity of the community control violation."

*Brooks* at ¶ 20. Additionally, when analyzing a prosecuting attorney's right to represent the

state at a sentencing hearing for a community control violation, the supreme court

specifically referenced R.C. 2929.11, stating:

> R.C. 2929.19(A) and Crim.R. 32(A)(2) direct the trial court at the time of imposing sentence to afford the prosecuting attorney the right to speak on behalf of the state, *because it has an interest in ensuring that a proper sentence is imposed to punish and rehabilitate the offender while protecting the public, R.C. 2929.11(A). These same statutes apply when the court decides the appropriate sentence for a community control violation*."

(Emphasis added.) *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, ¶ 19.

{¶41} Given the supreme court's reference to R.C. 2929.11(A) as being a relevant

consideration when the trial court is deciding an appropriate sentence for a community

control violation, as well as the court's instruction that the trial court look at the seriousness

of the offender's conduct, both as it relates to the underlying felony offense and as it relates

to the community control violation, we find that R.C. 2929.11 and 2929.12 remain relevant

considerations for the trial court in imposing a prison sentence on a community control

violation. We therefore overrule *Glenn* to the extent that *Glenn* finds R.C. 2929.11 is

inapplicable to the trial court's imposition of a penalty for a community control violation. We

find that in imposing a sentence for an offender's violation of community control, the trial

court shall consider the R.C. 2929.11 purposes and principles of felony sentencing as well

as the relevant seriousness and recidivism factors set forth in R.C. 2929.12 in imposing a

sentence.

{¶42} Turning to the record before us, and applying the standard set forth in R.C.

2953.08(G)(2), we find no error in the trial court's decision to sentence appellant to 18

months in prison for his community control violation. Appellant's sentence is not clearly and

convincingly contrary to law as the 18-month sentence falls within the permissible statutory

range for a fourth-degree felony in accordance with R.C. 2929.14(A)(4) and the sentence did not exceed the maximum prison term that was specified by the trial court at appellant's initial sentencing hearing in February 2018. *See Jackson* at ¶ 13. Furthermore, contrary to appellant's assertions, the record reflects that the trial court considered the seriousness and recidivism factors of R.C. 2929.12, as well as the principles and purposes of felony sentencing set forth in R.C. 2929.11, in imposing a prison term for appellant's violation of his community control.

{¶43} As this court has previously recognized, "'there is no statutory or common law requirement that the trial court incorporate any specific findings in its sentencing entry specific to the principles and purposes of sentencing * * * [or] the seriousness and recidivism factors found in R.C. 2929.11 and R.C. 2929.12 [respectively].'" *State v. King*, 12th Dist. Butler No. CA2018-05-101, 2019-Ohio-1492, ¶ 9, quoting *State v. Van Tielen*, 12th Dist. Brown No. CA2015-09-025, 2016-Ohio-1288, ¶ 14. Furthermore, a trial court is not required to expressly cite to R.C. 2929.11 or 2929.12 at the sentencing hearing. *See Crank*, 2016-Ohio-638 at ¶ 8. "'Instead, the law only requires that the record demonstrate that the trial court properly *considered* the purposes and principles of sentencing as well as the seriousness and recidivism factors of R.C. 2929.11 and R.C. 2929.12.'" (Emphasis sic.) *King* at ¶ 9, quoting *Van Tielen* at ¶ 14. Moreover, "[i]n sentencing a defendant, a trial court is not required to consider each sentencing factor, but rather to exercise its discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure." *State v. Tillett*, 12th Dist. Butler No. CA2019-11-192, 2020-Ohio-3836, ¶ 12, citing *State v. Littleton*, 12th Dist. Butler No. CA2016-03-060, 2016-Ohio-7544, ¶ 12.

{¶44} The record reflects that though the sentencing court did not specifically cite to R.C. 2929.11 and 2929.12 during appellant's sentencing hearing, the trial court nonetheless considered the principles and purposes of sentencing and seriousness and recidivism

factors when it revoked appellant's community control and imposed an 18-month prison term. When imposing appellant's sentence, the court stated that its "number one priority" was to "protect the public." The court found that this priority could not be achieved by anything other than a prison sentence, as appellant's actions while on community control demonstrated appellant was a "a terrible probationer" who was only "putting in half of what [he] could do." The court noted that appellant had not responded favorably to the conditions of his community control, which negatively affected his ability to be rehabilitated and made recidivism more likely. The court discussed the fact that appellant did not appear to understand that he had done anything wrong while on community control, even though his conduct led to multiple community control violations. The fact that appellant failed to appreciate his actions, had not progressed very far in his sex offender treatment program, and appeared to "do what[ever] [he] want[ed] to do" were factors the court considered in looking at appellant's risk of recidivism. Appellant's argument that the trial court failed to consider the factors set forth in R.C. 2929.12 is, therefore, without merit.

{¶45} For the reasons discussed above, we conclude appellant's conviction is not contrary to law. We further find that given appellant's multiple community control violations, his failure to appreciate the conduct that led to his unsuccessful discharge from the sex offender treatment program, and the trial court's need to protect the public from future crime by appellant, appellant's 18-month prison sentence is supported by the record. Appellant's third assignment of error is overruled.

{¶46} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.