[Cite as *State v. Rogers*, 2025-Ohio-2397.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-A-0102 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| MELISSA ROGERS, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00504 |

## OPINION AND JUDGMENT ENTRY

Decided: July 7, 2025
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, and *Dane R. Hixon*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Richard E. Hackerd*, 55 Public Square, Suite 2100, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Appellant, Melissa Rogers, appeals from the judgment of the Ashtabula County Court of Common Pleas, finding she violated the terms of her community control and sentencing her to 15 months in prison. For the following reasons, we affirm the judgment of the trial court.

{¶2} In January 2024, Rogers pleaded guilty to an amended Count One of the indictment, Attempted Aggravated Trafficking in Drugs, a fourth-degree felony in violation of R.C. 2923.03(B) and 2925.03(A)(2)(C)(1)(a). In late August 2024, the trial court sentenced Rogers to two years of community control, the conditions of which included

entering and completing the Northeast Ohio Community Alternative Program ("NEOCAP"), a residential substance abuse treatment program for offenders.

{¶3} On September 10, 2024, the Ashtabula County Adult Probation Department filed a "complaint for violation of probation," alleging Rogers did not comply with the NEOCAP condition of her community control because she was terminated unsuccessfully from the program.

{¶4} On November 4, 2024, Rogers waived her right to a probable cause hearing and requested the trial court proceed to a final hearing. The trial court heard testimony from Rogers and her probation officer, Aaron Thomas Hough.

{¶5} Hough testified he had been supervising Rogers since her sentencing hearing on August 20, 2024. He explained Rogers entered NEOCAP on August 28. Several days later, NEOCAP informed Hough's immediate supervisor that Rogers refused to participate and NEOCAP was terminating her unsuccessfully from the program. On September 5, Hough transported Rogers from NEOCAP to the Ashtabula County Jail. On September 10, he filed the underlying complaint.

{¶6} Rogers testified she went into the NEOCAP program with an "open-mind," and she "ended up getting kidney stones." She explained she develops kidney stones frequently, and her doctor advised her to go to the emergency room when they occur. Rogers further testified that the NEOCAP administrators refused to get her medical assistance or medication and refused to allow her to call her doctor. She "just laid there for two days," and "they never even checked on" her. This occurred during her third or fourth day in the program. The nurse did not visit or assess her and simply told the administrators to inform Rogers to "stay in bed and drink water." In a separate incident,

Case No. 2024-A-0102

when Rogers was upset after learning her home had been robbed and her dog poisoned, the NEOCAP administrators put her in "a little cell" called the "dog room," which was "covered in pictures of dogs," and they "left her there for hours." She told the NEOCAP administrators she did not want to participate in the program and to take her back to jail.

{¶7} The trial court decided to continue the hearing due to time constraints, further stating:

> However, before we meet again and – I do want some information here from NEOCAP. I would like information here from NEOCAP, as I don't have enough information here. I've heard testimony from both on behalf of the State, as well as on behalf of the defense. But I'd like some information here from the NEOCAP facility as it relates to the situation. And I don't know if there's something that exists or is created by NEOCAP or whatever it may be, but there is information that I would like here in addition to what I've heard today. So because we have to break anyway due to time, this would be a good time for either side or both sides to get that information.

{¶8} On November 20, 2024, at the continuation of the hearing, the State presented Jennifer Melvin, the director of the NEOCAP female facility, as a witness. Melvin testified Rogers made several medical complaints concerning kidney stones, back pain, and possibly headaches. She saw a registered nurse five times for medical issues and one time for a physical. She was at NEOCAP for eight days. The nurse issued a referral for a urology appointment to Rogers' case manager; however, Rogers was terminated from the program before the appointment could be made. Rogers was terminated unsuccessfully from the program after she made requests to leave. A registered nurse is at the facility except for on certain holidays, and the facility transfers residents to the hospital when medical emergencies arise.

{¶9} The court found the State proved, by a preponderance of the evidence, that Rogers violated her community control when she was terminated unsuccessfully from

Case No. 2024-A-0102

NEOCAP. The State advocated a revocation of community control and imposition of the maximum sentence, and defense counsel advocated a different treatment center. Rogers confirmed she was not interested in returning to NEOCAP.

{¶10} The court concluded that Rogers was no longer amenable to community control and sentenced her to 15 months in prison.

{¶11} Rogers timely appealed, raising three assignments of error:

{¶12} "[1.] The Trial Court abused its discretion in finding a violation of probation.

{¶13} "[2.] The Trial Court denied Rogers due process of law when it sua sponte ordered additional testimony after both State and Defense had closed, even providing the prosecutor a list of information necessary to establish the State's case.

{¶14} "[3.] Rogers' lack of treatment violates the prohibition on cruel and unusual punishment provided for in the U.S. and Ohio Constitutions."

{¶15} "A community control revocation hearing is not a criminal trial, so the state is not required to establish a violation of the terms of the community control beyond a reasonable doubt." (Citations omitted.) *State v. Ryan*, 2021-Ohio-4059, ¶ 23 (11th Dist.). "Rather, the State need only present substantial evidence of a violation of the defendant's community control." *Id.*

{¶16} Further, we review a trial court's finding of a community-control violation under an abuse of discretion standard, and a "'trial court's decision to revoke community control even for a 'minor' violation, is not an abuse of discretion.'" *State v. Bika*, 2019-Ohio-3841, ¶ 28 (11th Dist.), quoting *State v. Solomon*, 2019-Ohio-1841, ¶ 21 (11th Dist.). An abuse of discretion is a term of art, "connoting judgment exercised by a court, which does not comport with reason, nor the record." *State v. Underwood*, 2009-Ohio-2089, ¶

30 (11th Dist.), citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Stated differently, an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

{¶17} "'A trial court does not abuse its discretion by revoking an offender's community control where the violation in question was one over which the offender had control.'" *State v. Noonan*, 2019-Ohio-2960, ¶ 19 (12th Dist.), quoting *State v. Tranter*, 2001 WL 290192, *3 (12th Dist. Mar. 26, 2001). A trial court also does not abuse its discretion in revoking community control "'when the offender is on notice that successful participation in a particular program is a requirement of the community control and the offender is unsuccessfully discharged from the program.'" *State v. Motz*, 2020-Ohio-4356, ¶ 28 (12th Dist.), quoting *State v. Smith*, 2020-Ohio-3235, ¶ 8 (12th Dist.). "The privilege of community control rests upon a defendant's compliance with the conditions of community control and any violation of those conditions may properly be used to revoke the privilege." *Id.*

{¶18} Rogers did not object to the revocation of community control or to the sentence imposed by the court. Therefore, she has forfeited all but plain error review on appeal. *State v. Neubig*, 2021-Ohio-4375, ¶ 16. "'Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court.'" *Id.*, quoting *State v. Rogers*, 2015-Ohio-2459 ¶ 22. "The appellant bears the burden of demonstrating plain error by proving that the outcome would have been different absent the plain error." *Id.*, citing *State v. Payne*, 2007-Ohio-4642, ¶ 17. "The

Case No. 2024-A-0102

plain error must be a deviation from a legal rule and an obvious defect in the proceedings." *Id.*, citing *Rogers* at ¶ 22. "Further, even when the error is obvious, "'it must have affected substantial rights,' meaning "'that the trial court's error must have affected the outcome of the trial.""" *Id.*, quoting *Rogers* at ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶19} In her first assignment of error, Rogers contends the trial court erred by finding she violated the terms of her community control because the State's witnesses, Hough and Melvin, admitted they did not have firsthand knowledge of the facts.

{¶20} Pursuant to Evid.R. 101(D)(3), the Ohio Rules of Evidence "do not apply" in "proceedings with respect to community control sanctions." "The rationale behind this exception is, given the informality of this type of proceeding, the trier of fact should be able to consider any reliable and relevant evidence to determine whether the probationer has violated the conditions of his probation." *State v. Blankenship*, 2022-Ohio-1808, ¶ 16 (3d Dist.). "Indeed, hearsay evidence can be permissible in a community-control-revocation hearing, even if it would have been inadmissible in a criminal trial." *Id.*

{¶21} "'Whether hearsay evidence is sufficiently trustworthy to be worth considering during a revocation hearing lies within the sound discretion of the trial court.'" *State v. Mullins*, 2022-Ohio-4686, ¶ 8 (3d Dist.), quoting *State v. Stringer*, 2021-Ohio-2608, ¶ 14 (2d Dist.). Allowing hearsay evidence can be reversible error, however, when it is the only evidence presented, and it is crucial to a determination of a probation violation. *Id.* at ¶ 9. "This rule exists to protect the 'due process right to confront and cross-examine adverse witnesses.'" *Id.*, quoting *State v. Brandon*, 2010-Ohio-1902, ¶ 19 (2d Dist.).

Case No. 2024-A-0102

{¶22} In this case, Rogers testified that she violated her community-control condition by requesting to leave the NEOCAP program and return to jail. Thus, from her testimony alone, the trial court could have properly determined Rogers violated her community control. *See id.* at ¶ 10 (the court's decision to find the defendant had violated the conditions of community control was not based solely on hearsay testimony since the defendant admitted to the violation); *Blankenship* at ¶ 17 (it was inconsequential whether the probation officer's allegations were based on hearsay since the defendant admitted he violated the terms of his community control).

{¶23} Further, the hearsay testimony from the State's witnesses went not to Rogers' unsuccessful termination from the NEOCAP program but to her reason for requesting to be terminated, i.e., the alleged lack of medical attention/treatment. While Melvin did not have personal knowledge of the conversations and medical treatment Rogers received from the nurse, she reviewed the nurse's request for Rogers to see a urologist. Moreover, she had firsthand personal knowledge of Rogers' request to be terminated from the program. The director further testified to the facility's procedures surrounding medical requests and emergency treatment. In addition, both of the State's witnesses were cross-examined by defense counsel.

{¶24} We conclude there was no plain error in the trial court's finding that Rogers violated her community control condition of successfully completing the NEOCAP program. Rogers' first assignment of error is without merit.

{¶25} In her second assignment of error, Rogers contends the trial court denied her due process of law by continuing the hearing and requesting the State to provide a witness from NEOCAP.

Case No. 2024-A-0102

{¶26} Even though the rules of evidence do not apply to community-control hearings, revocation hearings must still comport with due process requirements. *Motz*, 2020-Ohio-4356, at ¶ 17 (12th Dist.).

{¶27} In *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972), the Supreme Court of the United States identified the "minimum requirements of due process" for parole revocation hearings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

{¶28} The United States Supreme Court applied these same requirements to probation-violation hearings in *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and the Supreme Court of Ohio adopted them in *State v. Miller*, 42 Ohio St.2d 102, 102 (1975).

{¶29} We cannot conclude Rogers was denied due process under the circumstances presented herein. Rogers misconstrues the trial court's request for information from NEOCAP, contending the trial court provided the State with a "list of information necessary to establish the State's case."

{¶30} A review of the hearing transcripts reveals Rogers waived her right to a preliminary hearing and wanted to go forward with the final hearing, where she admitted to requesting to be terminated from NEOCAP. The court continued the hearing due to the late hour and requested additional information from NEOCAP from either the State or the defense, both of whom were free to bring in other witnesses and evidence regarding Rogers' claim that NEOCAP failed to address her medical condition. Both of the State's

Case No. 2024-A-0102

witnesses had personal knowledge of Rogers' voluntary termination from the program, and Melvin, as the director, was in custody of Rogers' record. Rogers had the opportunity to confront them at the hearing, and she could have challenged the nursing care she received and submitted evidence of her medical condition. *See Motz*, 2020-Ohio-4356, at ¶ 22 (12th Dist.) (the defendant's rights to due process were not violated where the defendant had the opportunity to confront the witness and challenge the basis for his termination from the treatment program).

**{¶31}** Rogers' second assignment of error is without merit.

**{¶32}** In her third assignment of error, Rogers contends she was denied treatment for her kidney stone condition and, thus, she was subjected to cruel and unusual punishment.

**{¶33}** The United States Supreme Court has held "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, (1976), quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

**{¶34}** Rogers' claim fails at the outset since she failed to raise this issue in the trial court below. *See In re L.S.*, 2018-Ohio-4758, ¶ 34 (6th Dist.) ("Constitutional issues apparent at the time of the trial are waived unless brought to the attention of the trial court."). Furthermore, Rogers was not even a prisoner during the times she claims she was denied medical treatment.

**{¶35}** Other than her own testimony, there is no evidence of her medical condition or that NEOCAP denied her medical treatment. She admitted she voluntarily left the program, and despite the opportunity to do so, Rogers submitted no additional evidence.

Case No. 2024-A-0102

Her testimony that she never saw a nurse directly and was refused medical treatment was contradicted by the State's evidence that she was seen by a nurse six times during her eight days in the program and she would have had an appointment with a urologist if she had not left voluntarily. The NEOCAP director also testified as to the procedure for obtaining emergency care and doctor visits for those attending the program. Thus, even if such a claim could be made while participating in a voluntary treatment program, it is tenuous at best that Rogers was somehow denied medical treatment and subjected to cruel and unusual punishment.

{¶36} Thus, Rogers' third assignment of error is without merit.

{¶37} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit.  It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE MATT LYNCH

JUDGE EUGENE A. LUCCI,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-A-0102