[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Castner*, Slip Opinion No. 2020-Ohio-4950.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4950

THE STATE OF OHIO, APPELLEE, *v*. CASTNER, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Castner*, Slip Opinion No. 2020-Ohio-4950.]

*Criminal law—Sentencing—Community control—R.C. 2929.15(B)(1)(c)(i)—An offender's violations of substantive community-control rehabilitative requirements aimed at addressing the offender's misconduct are not technical violations of community control—Court of appeals' judgment affirmed.*

(No. 2019-1221—Submitted June 17, 2020—Decided October 21, 2020.)

APPEAL from the Court of Appeals for Richland County,

No. 2018 CA 0127, 2019-Ohio-2979.

_____

**DEWINE, J.**

{¶ 1} David Castner was ordered to complete a drug-treatment program as a condition of his community-control sanction.  Soon after entering the program, he was kicked out for using the facility's computers to talk to young girls online.

Because he had failed to complete drug treatment and another court-ordered program, the trial court terminated his community control and sentenced him to a 12-month prison term.

{¶ 2} An Ohio statute authorizes a trial court to impose a prison term as a penalty for community-control violations but limits the amount of prison time that the court may impose for a "technical violation" to 90 days. R.C. 2929.15(B)(1)(c)(i). Castner asks this court to hold that any violation that does not constitute a felony is a "technical violation" subject to the sentencing cap. We recently rejected that interpretation in *State v. Nelson*, __ Ohio St.3d __, 2020-Ohio-3690, __ N.E.3d __. There, we explained that, generally, violations of administrative requirements facilitating community-control supervision are technical violations, whereas violations of substantive rehabilitative requirements aimed at addressing the offender's misconduct are not. *Id.* at ¶ 26.

{¶ 3} Today, we apply the *Nelson* framework and conclude that Castner's violations were not technical in nature. That means that the trial court was authorized to impose a prison term in excess of the statutory cap for technical violations, so we affirm the judgment below.

*Castner fails to complete drug treatment*

{¶ 4} Castner pleaded guilty to aggravated possession of drugs, a fifth-degree felony. The Richland County Common Pleas Court sentenced Castner to two years of community control and advised him that if he violated the terms of his community control, he would receive a 12-month prison sentence. The court further imposed a number of conditions directed at addressing Castner's substance abuse, including a requirement that he complete a residential treatment program offered by the Volunteers of America ("VOA"). Castner's drug offense had come on the heels of his release from prison for crimes involving his sexual abuse of a young girl. Consequently, the trial court also ordered Castner to participate in Richland County's Re-Entry Court—a program designed to reduce recidivism rates

by providing services, supervision, and support to recently released prisoners as they transition back into society. *See* Richland County Common Pleas Courts, http://richlandcourtsoh.us/robinson.php (accessed Oct. 8, 2020) [https://perma.cc/E8YB-YQZZ].

{¶ 5} Just three weeks into his community-control sentence, the VOA kicked Castner out of its program. During his short stint at the VOA, Castner made multiple requests to be moved to mental-health facilities due to his alleged homicidal and suicidal ideations and told a staff member that he was "not mentally ready to handle the bullshit at the VOA." The VOA reported that Castner was a "continuous disruption" to the operations and programming at the facility.

{¶ 6} Castner's probation officer filed a complaint, alleging that Castner had violated the condition of his community control requiring him to complete the VOA treatment program. Castner admitted to the violation. The probation officer recommended that the court send Castner to a different residential treatment program run by an organization called Alvis House, which in his view was better suited to respond to Castner's needs. The trial court continued Castner on community control with the new condition that he complete the Alvis House program. Castner entered the facility the following day.

{¶ 7} After barely two weeks at Alvis House, program staff discovered that Castner had been using the facility's computers to contact young girls. Castner had set up a "Hello Kitty" themed e-mail account based on the popular children's cartoon character. He told a staff member that he had created the account and posted pictures of himself online in an effort "to get females to talk to him." Castner had reached out to a number of young girls over the Internet and had begun talking to a 13-year-old girl on the phone. Because his actions had violated the facility's policies on computer and phone use, Alvis House discharged him from the program. And for failing to complete either of the treatment programs offered to him, Castner was also terminated from the Re-Entry Court.

{¶ 8} Castner's probation officer filed a second complaint, alleging that Castner had violated the conditions of his community control ordering him to complete the Alvis House and Re-Entry Court programs. Castner again admitted to the alleged violations. At the hearing on the violations, Castner asked the court to give him another chance at Alvis House, assuming the program would allow him to return. His probation officer recommended that the court terminate Castner's community-control sanction and impose the suspended 12-month prison sentence. The trial court continued the matter to consider its options.

{¶ 9} When the parties reconvened a few weeks later, the trial court concluded that Castner had burned through all his available treatment options and that his behavior on community control demonstrated that he continued to pose a risk to the public. The court therefore imposed the 12-month prison term.

{¶ 10} Castner appealed his prison sentence to the Fifth District Court of Appeals, arguing that his failure to complete the Alvis House and Re-Entry Court programs were "technical" violations and thus his sentence could not exceed the 90-day sentencing cap contained in R.C. 2929.15(B)(1)(c)(i). Under that provision, if an offender has been placed on community control for committing a fifth-degree felony, the trial court's ability to impose a prison sentence upon the offender for violating the terms of his community control is subject to two limitations:

> If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed ninety days.

*Id.*

4

**{¶ 11}** The Fifth District affirmed Castner's sentence. It concluded that the terminations from the Alvis House and Re-Entry Court programs were violations of substantive rehabilitative conditions, rather than mere technical violations, and therefore the trial court was within its authority to impose the full 12-month prison sentence. 2019-Ohio-2979, ¶ 21.

**{¶ 12}** We accepted Castner's appeal and now affirm.

*Castner's violations were not technical violations*

**{¶ 13}** This appeal turns on the meaning of the term "technical violation" in R.C. 2929.15(B)(1)(c), which is not defined in the statute. Relying on this court's discussion of "technical violations" in *State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, 609 N.E.2d 546 (1993), Castner asserts that "technical violations" are violations that do not constitute a new felony.

**{¶ 14}** We recently rejected that argument in *Nelson*, __ Ohio St.3d __, 2020-Ohio-3690, __ N.E.3d __. There, we concluded that the *Taylor* decision did not at all address the meaning of "technical violation" under the statutory scheme at issue here. *Nelson* at ¶ 25. And we determined that the plain meaning of the term "technical" pertains to something that is "immaterial," *id.* at ¶ 18, quoting *Black's Law Dictionary* 1463 (6th Ed.1990), or "[i]nvolved in detail or in form rather than in a principle or in substance," *id.*, quoting Lynton, *Ballentine's Legal Dictionary and Thesaurus* 661 (1995). Applying the common understanding of the term in the community-control context, we concluded that an offender commits a "technical violation" if the condition violated is "akin to 'an administrative requirement facilitating community control supervision.' " *Id.* at ¶ 26, quoting *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, ¶ 18. But we explained that when a violation "concerns a condition of community control that was 'specifically tailored to address' matters related to the defendant's misconduct or if it can be deemed a 'substantive rehabilitative requirement which

addressed a significant factor contributing to' the defendant's misconduct," the violation does not amount to a technical violation. *Id*., quoting *Davis* at ¶ 17-18.

{¶ 15} Additionally, we observed that the statute limits the trial court's discretion when imposing a prison sentence for a less serious "technical violation" but it gives the court greater discretion in sentencing an offender for violating a more serious community-control violation, even if the violation did not rise to the level of a crime. *Id.* at ¶ 22. Thus, we concluded that a trial court should "engage in a practical assessment of the case before it" by considering "the nature of the community-control condition at issue and the manner in which it was violated, as well as any other relevant circumstances in the case." *Id.* at ¶ 26. We emphasized that when evaluating whether a violation is technical, no single factor is determinative. *Id.*

{¶ 16} Applying our analysis in *Nelson* to the facts of this case, it is evident that Castner's violations were not technical in nature. The conditions imposed by the court mandating that Castner complete the Alvis House and Re-Entry Court programs were plainly substantive rehabilitative requirements that were specifically tailored to address Castner's drug use and were aimed at reducing his likelihood of recidivism. Indeed, substance-abuse treatment was the central focus of Castner's community-control sanction. When he failed to complete the VOA treatment program, the trial court worked with him by placing him in a program better suited to his needs, giving him another opportunity to receive treatment. And the trial court warned him that if he failed to complete treatment a second time, prison would likely follow.

{¶ 17} Moreover, the circumstances surrounding Castner's termination from the Alvis House program belie his claim that his failure to complete the program was a technical violation. Castner had been at the facility a mere two weeks before the staff realized that he had been disobeying the program's rules regarding computer and phone use so that he could communicate with young

girls—behavior that, given his history, might well have led to criminal conduct had it continued undetected. Castner's termination from the Alvis House program was the direct result of his own substantial misconduct, which occurred almost immediately upon his arrival at the facility and without his having made a serious attempt to engage in the required treatment.

*Conclusion*

{¶ 18} By failing to complete treatment through the Alvis House program and by being unsuccessfully terminated from the Re-Entry Court, Castner violated two substantive rehabilitative conditions of his community control that were specifically tailored to address his criminal drug use. And the circumstances surrounding the violations were such that they cannot be deemed merely technical in nature. Thus, the sentencing cap in R.C. 2929.15(B)(1)(c)(i) does not apply, and the trial court had the discretion to sentence Castner to a 12-month prison term. We therefore affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, and FISCHER, JJ., concur.

STEWART, J., concurs, with an opinion.

DONNELLY, J., dissents, with an opinion.

_____

**STEWART, J., concurring.**

{¶ 19} Although I joined the dissenting opinion in *State v. Nelson*, __ Ohio St.3d __, 2020-Ohio-3690, __ N.E.3d __, and I continue to conclude that a non-felony violation of community control is a technical violation of a person's community-control conditions, stare decisis compels me to join the majority's decision today because the law on the issue before us was affirmatively established by a majority of this court in *Nelson*. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 43 ("The doctrine of stare decisis is designed to provide continuity and predictability in our legal system").

_____

**DONNELLY, J., dissenting.**

{¶ 20} Respectfully, I dissent.  As I explained in my dissenting opinion in *State v. Nelson*, __ Ohio St.3d __, 2020-Ohio-3690, __ N.E.3d __, the term "technical violation" in the field of criminal law is commonly understood to be a violation of a community-control (or parole or probation) term that is not itself a criminal offense, *id.* at ¶ 36 (Donnelly, J., dissenting).  Further, construing the term "technical violation" according to its commonly understood meaning gives effect to the legislative intent underlying R.C. 2929.15(B)(1)(c), because one of the main purposes behind the statutory provision was "lowering incarceration costs to Ohio taxpayers by reducing the number of low-level offenders in the state prison system."  *Id.* at ¶ 40 (Donnelly, J., dissenting).

{¶ 21} The General Assembly is free to define the term "technical violation" in any way it pleases relating to R.C. 2929.15(B)(1)(c), and it is free to establish a definition that is different from the commonly understood meaning of the term.  But until it does so, we should heed the clear intent of the language that is currently in place.  We should not allow our blind reverence for judicial discretion to attenuate the meaning of the term "technical violation" to the point that the meaning of "technical" lies entirely in the eye of the beholder.  .

{¶ 22} Although appellant David Castner's violation of his community-control sanction was substantial, in my view, it constituted a "technical violation" as the term is used in R.C. 2929.15(B)(1)(c).  And although the trial court was circumspect in reaching its judgment imposing a 12-month prison term upon Castner following his violation, the court was nonetheless limited by R.C. 2929.15(B)(1)(c)(i) to imposing a 90-day term of imprisonment.  Accordingly, I dissent and would reverse the judgment of the Fifth District Court of Appeals.

_____

Gary D. Bishop, Richland County Prosecuting Attorney, and Joseph C. Snyder, Assistant Prosecuting Attorney, for appellee.

Darin Avery, for appellant.

_____