[Cite as *State v. Mehl*, 2022-Ohio-1154.]

Released 3/29/22

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                    :

      Plaintiff-Appellee,        :      Case No. 20CA14

      v.                         :

                              :      <u>DECISION AND</u>
DAVID E. MEHL,                    :      <u>JUDGMENT ENTRY</u>

      Defendant-Appellant.       :
_____
<u>APPEARANCES:</u>

Kathryn Cornelius-Blume, Dagger, Johnston, Miller, Ogilvie & Hampson, LLP, Lancaster, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M. Saunders, Assistant Athens County Prosecuting Attorney, Athens, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, David E. Mehl, appeals the trial court's judgment revoking his community control in two cases and sentencing him to four years in prison. Mehl raises a single assignment of error on appeal, contending that the trial court abused its discretion when it revoked his community control and imposed prison time. For the reasons that follow, Mehl's sole assignment is overruled and the judgment of the trial court is affirmed.

FACTS

{¶2} Appellant, David Mehl, pleaded guilty to one count of burglary, a second-degree felony in violation of R.C. 2911.12(A)(2) on February 14, 2019, and was sentenced to a five-year term of community control (16CR0452).  At his initial sentencing hearing, he was advised that a violation of his community control could result in the imposition of a four-year prison term.  One of the specific conditions of his community control was that he enter and successfully complete the "SEPTA Correctional Facility program."[1]  The State filed a notice of violation on May 22, 2018, alleging four violations of community control that included failure to report, testing positive for methamphetamine and failure to pay restitution.  Mehl admitted to these violations and the trial court continued his community control.  The State filed another notice of violation on July 23, 2018, alleging six violations of community control that included testing positive for methamphetamine, MDMA, and suboxone, and failure to show up for an appointment at the "Clearview Detox Program," as ordered.  Mehl admitted to these violations and the trial court again continued his community control, adding a

---

[1] "SEPTA" stands for "Southeastern Probation Treatment Alternative Correctional Facility" and it was previously located in Nelsonville, Ohio.  https://www.athensmessenger.com/news/septa-a-look-inside-ohio-s-second-oldest-community-based-correctional-facility/article_306baf88-75f1-11e1-b08f-001871e3ce6c.html

new condition requiring him to enter and successfully complete a program at the "Star/SEPTA Correctional Facility."[2]

{¶3} Another notice of violation was filed on December 4, 2018, alleging two violations, one of which was Mehl's unsuccessful termination from the "Star/SEPTA Correctional Facility Program."  Mehl again admitted to the violations and the trial court once again continued his community control, but it added a new condition requiring him to complete the "Athens County Prosecutor's Office Vivitrol Program,"[3] as well participate in the detox program at "Clem House."[4]  The State filed yet another notice of violation on January 27, 2020, alleging three violations, one of which was an allegation that Mehl failed to successfully complete the vivitrol program.  This notice of violation was followed by a supplemental notice of violation on January 30, 2020, a second supplemental notice of violation on February 10, 2020, a third supplemental notice of violation on February 12, 2020, a fourth supplemental notice of violation on March 9, 2020, and a fifth supplemental notice of violation on March 10, 2020.  In all, the

---

[2] Both STAR and SEPTA were funded as community-based correctional facilities, however, the "SEPTA Correctional Facility" was dissolved as a legal entity on July 1, 2019, and officially became a "STAR Justice Center Facility."  There are two STAR facilities, one of which is located in Nelsonville, Ohio and is known as the "STAR Community Justice Center – Athens County Campus."  The other facility is located in Franklin Furnace, Ohio, and is known as the "STAR Community Justice Center."  athensmessenger.com/news/septa-to-officially-become-star-justice-center-facility/article_6fa163cc_3f6.

[3] The Athens County "Prosecutor's office's Vivitrol program" was launched in 2015 "as part of the office's Community Justice initiatives."  http://athenscountyprosecutor.org/wp-content/uploads/2020/11/Vivitrol-five-years-feature.pdf

[4] "The John W. Clem Recovery Houses" are located in Athens, Ohio and are "Level II" recovery houses for adult men.

supplemental notices of violations alleged ten violations of community control, including the commission of a new felony (aggravated possession of drugs), the commission of a new misdemeanor (driving under suspension), a report that Mehl was in receipt of stolen property, and that he had trespassed on the property of an individual named Thomas McKee. Mehl admitted to most of the violations, but did not admit to the trespassing allegation. The trial court again continued Mehl's community control, gave him 95 days credit for time served, and ordered him to enter and successfully complete a program at "River City CBCF."[5]

{¶4} Another notice of violation was filed on July 15, 2020, alleging that Mehl had been terminated from the "River City CBCF" program. This notice was followed by an amended supplemental notice on July 17, 2020, and a second supplemental notice of violation on July 30, 2020. The amended and supplemental notice included a total of seven community control violations, which included allegations that Mehl, on two different occasions, created a safety risk to officers at the Southeastern Ohio Regional Jail, failed to follow orders while in jail, and caused damage to his jail cell by flooding the toilet two different times. Mehl admitted to these violations and the trial court again continued his community control, giving him 65 days credit for time served and ordering him to enter and

---

[5] The Hamilton County River City Correctional Center (RCCC) "is one of eighteen Community Based Correctional Facilities (CBCF's) presently operating in the State of Ohio." hamiltoncountyohio.gov/government/departments/river_city_correctional_center.

successfully complete the "STAR Community Justice Center" program. Near this time period, on September 14, 2020, Mehl pled guilty to the new felony offense (aggravated possession of drugs-identified as case no. 20CR0037) and was sentenced to a five-year term of community control. He was informed during his sentencing hearing that a violation of his community control could result in the imposition of a one-year prison term. Thus, his two community control terms were running together at this point.

{¶5} Finally, the State filed a notice of violation on December 2, 2020, alleging Mehl had failed to complete the "STAR program" as ordered. This violation constituted a violation of his community control in his 2016 burglary case, as well as his 2020 aggravated possession of drugs case. Mehl once again admitted to the violation. This time, however, the trial court revoked Mehl's community control and imposed a prison term of four years in case no. 16CR0452 and one year in case no. 20CR0037, to be served concurrently. It is from the trial court's December 23, 2020, judgment entry that Mehl now brings his appeal, setting forth a single assignment of error for our review.

ASSIGNMENT OF ERROR

I.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REVOKED APPELLANT'S COMMUNITY CONTROL AND IMPOSED PRISON TIME.

{¶6} In his sole assignment of error, Mehl contends that the trial court erred when it revoked his community control and imposed prison time. Although the wording of Mehl's assignment of error includes a challenge to the trial court's decision to revoke his community control, the argument portion of his brief primarily challenges the sentence imposed by the trial court upon revoking community control. Mehl argues that the trial court inappropriately relied on alleged past misconduct when it imposed a four-year prison term, rather than simply focusing on the reason for the most recent violation, which was his failure to complete the STAR Community Justice Center program. The State contends, however, that the trial court did not look at prior bad acts, "but merely recognized that [Mehl] failed to take advantage of the various opportunities that were given to him[,]" one of which was the STAR program. The State further argues that this Court has previously found the failure to complete a drug treatment program that was ordered as a condition of community control to be a violation of a substantive rehabilitation requirement, and that Mehl admitted that he failed to complete the STAR program. The State argues that the trial court weighed all of the appropriate factors, considered the principles and purposes of sentencing, and did not err or abuse its discretion when it revoked Mehl's community control and sentenced him to prison.

Standard of Review

{¶7} This Court has explained that the proper standard to be applied when reviewing decisions revoking community control is one of abuse of discretion. *State v. Newsome*, 4th Dist. Hocking No. 17CA2, 2017-Ohio-7488, ¶ 7, citing *State v. Johnson*, 4th Dist. Meigs No. 14CA10, 2015-Ohio-1373 ¶ 13.  In both *Newsome* and *Johnson*, we noted that this Court has previously applied a two-part standard in such cases, as follows:

> " 'Because a community control revocation hearing is not a criminal trial, the State does not have to establish a violation with proof beyond a reasonable doubt.  *State v. Wolfson*, Lawrence App. No. 03CA25, 2004-Ohio-2750, ¶ 7, citing *State v. Payne*, Warren App. No. CA2001-09-081, 2002-Ohio-1916, in turn citing *State v. Hylton* (1991), 75 Ohio App.3d 778, 782, 600 N.E.2d 821.  Instead, the prosecution must present "substantial" proof that a defendant violated the terms of his community control sanctions.  *Wolfson*, citing *Hylton* at 782, 600 N.E.2d 821. Accordingly, we apply the "some competent, credible evidence" standard set forth in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, to determine whether a court's finding that a defendant violated the terms of his community control sanction is supported by the evidence. *Wolfson* at ¶ 7, citing *State v. Umphries* (July 9, 1998), Pickaway App. No. 97CA45; *State v. Puckett* (Nov. 12, 1996), Athens App. No. 96CA1712. This highly deferential standard is akin to a preponderance of the evidence burden of proof. *Wolfson*, citing *State v. Kehoe* (May 18, 1994), Medina App. No. 2284-M. * * * Thus, we conclude the appropriate review in this matter is twofold.  First, we review the record to determine whether there is substantial evidence to support the court's finding that C.M.C. violated the terms of probation or community control.  If it does, then we review the court's ultimate decision to revoke probation,

i.e., the sanction, under the more deferential abuse of discretion standard.' "

*Newsome* at ¶ 7, quoting *Johnson* at ¶ 13, in turn quoting *In the Matter of C.M.C.*, 4th Dist. Washington No. 09CA15, 2009-Ohio-4223, ¶ 17.

{¶8} Here, Mehl admitted to the violation that ultimately resulted in the revocation of his community control.  Thus, our review focuses on the trial court's ultimate decision to revoke community control, as well as its decision to impose prison time, which will be discussed in more detail below.

Legal Analysis

{¶9} As set forth above, Mehl's sole assignment of error primarily argues that the trial court improperly relied on alleged prior misconduct and/or prior bad acts and therefore abused its discretion when it sentenced him to prison.  For instance, Mehl argues that when sentencing him for the community control violations,  the trial court "contemplated and relied upon inappropriate conduct from [his] previous probation violation when sentencing [him] to the maximum amount of time in his two cases."  Mehl contends that the trial court "relied upon various prior bad acts to rationalize imposition of his sentence[,]" as evidenced by the trial court's statement on the record referencing the fact that Mehl had "been in and out of the system," and had not taken advantage of the opportunities he had been given "along the way[.]"  More specifically, Mehl argues that while his most recent community control violation was based upon his failure to complete the

STAR program, in sentencing him the trial court "relied heavily upon specific past misconduct[,]" misconduct for which Mehl advised the trial court he "was never charged and/or convicted[.]"[6]

{¶10} R.C. 2929.15 governs community control sanctions and provides in section (B)(1)(c) that a trial court may impose a prison term for a violation of community control. Further, R.C. 2929.15(B)(1)(c)(i) and (ii) contain special provisions related to imposing prison terms for violations of community control associated with convictions for fourth and fifth degree felonies. Mehl's community control was revoked in two separate cases, one of which involved an underlying second-degree felony, and the other of which involved a fifth-degree felony. R.C. 2929.15(B)(1)(c)(i) and (ii) provide as follows:

> (B)(1) If the conditions of a community control sanction imposed for a felony are violated or if the offender violates a law or leaves the state without the permission of the court or the offender's probation officer, the sentencing court may impose on the violator one or more of the following penalties:
>
> * * *
>
> (c) A prison term on the offender pursuant to section 2929.14 of the Revised Code and division (B)(3) of this section, provided that a prison term imposed under this division is subject to the following limitations and rules, as applicable:
>
> (i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony

---

[6]Mehl pointed out to the trial court that although the State alleged he had been in receipt of stolen property and had trespassed on another individual's property, he had never been convicted of these offenses. The exchange between the trial court and Mehl on this topic is set forth and more fully discussed below.

of the fifth degree, the prison term shall not exceed ninety days, provided that if the remaining period of community control at the time of the violation or the remaining period of the reserved prison sentence at that time is less than ninety days, the prison term shall not exceed the length of the remaining period of community control or the remaining period of the reserved prison sentence. If the court imposes a prison term as described in this division, division (B)(2)(b) of this section applies.

(ii) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, the prison term shall not exceed one hundred eighty days, provided that if the remaining period of the community control at the time of the violation or the remaining period of the reserved prison sentence at that time is less than one hundred eighty days, the prison term shall not exceed the length of the remaining period of community control or the remaining period of the reserved prison sentence. If the court imposes a prison term as described in this division, division (B)(2)(b) of this section applies.

R.C. 2929.15(B)(3) further provides as follows regarding the length of prison terms that may be imposed for community control violations that are non-technical, or substantive:

(3) The prison term, if any, imposed on a violator pursuant to this division and division (B)(1) of this section shall be within the range of prison terms described in this division and shall not exceed a prison term from the range of terms specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)(4) of section 2929.19 of the Revised Code. The court may reduce the longer period of time that the offender is required to spend under the longer sanction, the more restrictive sanction, or a prison term imposed pursuant to division (B)(1) of this section by the time the offender successfully spent under the sanction that was initially imposed. Except as otherwise specified in this division, the prison term imposed

under this division and division (B)(1) of this section shall be within the range of prison terms available as a definite term for the offense for which the sanction that was violated was imposed.
* * *

{¶11} Here, Mehl does not argue that the community control violations at issue were technical in nature. Furthermore, the Supreme Court of Ohio recently discussed the difference between technical and substantive violations of community control, explaining that "when a violation 'concerns a condition of community control that was "specifically tailored to address" matters related to the defendant's misconduct or if it can be deemed a "substantive rehabilitative requirement which addressed a significant factor contributing to" the defendant's misconduct,' the violation does not amount to a technical violation."[7] *State v. Castner*, 163 Ohio St.3d 19, 2020-Ohio-4950, 167 N.E.3d 939, ¶ 14, quoting *State v. Nelson*, 162 Ohio St.3d 338, 2020-Ohio-3690, 165 N.E.3d 1110, ¶ 26, in turn quoting *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, ¶ 18.

{¶12} Moreover, the *Castner* Court explained that although R.C. 2929.15 limits the discretion of the trial court in imposing a prison sentence for a technical violation of community control, the statute "gives the court greater discretion in

---

[7]At the time *Castner* was decided and when the trial court below issued its decision in this case, R.C. 2929.15 did not define the term "technical." However, the statute was recently amended to define the term. Because the new version of the statute was not in effect at time the trial court's decision was issued, we do not apply it here. However, we note that the new definition is not inconsistent with the reasoning contained in *Castner*.

sentencing an offender for violating a more serious community-control violation

[sic], even if the violation did not rise to the level of a crime." *Castner* at ¶ 15,

citing *Nelson* at ¶ 22. The Court went on to state as follows:

> [A] trial court should "engage in a practical assessment of the case before it" by considering "the nature of the community-control condition at issue and the manner in which it was violated, *as well as any other relevant circumstances in the case*."

(Emphasis added.) *Castner* at ¶ 15, quoting *Nelson* at ¶ 26.

{¶13} The *Castner* Court went on to determine that the conditions at issue

(i.e., the completion of two drug treatment programs), "were plainly substantive

rehabilitative requirements that were specifically tailored to address Castner's drug

use and were aimed at reducing his likelihood of recidivism." *Castner* at ¶ 16. As

such, the Court held that "the trial court had the discretion to sentence Castner to a

12-month prison term[,]" which was the prison term specified on the record during

Castner's original sentencing hearing. *Id.* at ¶ 18.

{¶14} Relying on *State v. Nelson*, this Court recently stated that "a trial

court on a case-by-case basis should consider 'the nature of the community-control

condition at issue and the manner in which it was violated, as well as any other

relevant circumstances in the case.' " *State v. Duckett*, 4th Dist. Scioto No.

20CA3924, 2021-Ohio-3110, ¶ 18, quoting *State v. Nelson* at ¶ 26. *See also State

v. Motz*, 2020-Ohio-4356, 158 N.E.3d. 641, ¶ 28, citing *State v. Smith*, 12th Dist.

Warren No. CA2019-09-104, 2020-Ohio-3235, ¶ 8 (holding that a trial court does not abuse its discretion in revoking community control when the offender has been advised that the successful participation in a particular program is a condition of community control and the offender fails to successfully complete the program). After agreeing with the trial court that Duckett's community control violations were not technical in nature, we determined that the 24-month prison sentence imposed by the trial court was authorized by law because Duckett was informed at his initial sentencing hearing that a 48-month prison term could be imposed for a violation of community control. *Duckett* at ¶ 25, citing *State v. Howard*, 162 Ohio St.3d 314, 2020-Ohio-3195, 165 N.E.3d 1088, ¶ 22 (holding that the notification requirement is met when the trial court at the initial sentencing hearing notifies a defendant of the exact prison term it will impose if he violated community control and is not required to repeat the notification at each revocation hearing).[8]

{¶15} In *Motz, supra*, the court essentially explained that once a trial court determines that community control should be revoked and a prison term should be imposed, the trial court's sentencing decision for a community control violation is reviewed under the standard set forth in R.C. 2953.08(G)(2), which is not an abuse of discretion standard. *Motz* at ¶ 37, citing *State v. Roberts*, 12th Dist. Butler No.

---

[8]Duckett was able to negotiate a prison term of 24 months, rather than forty-eight months, which was accepted by the trial court. *Duckett* at ¶ 26.

CA2019-02-025, 2019-Ohio-4205, ¶ 5 and *State v. Harris*, 12th Dist. Butler Nos.

CA2017-01-003 and CA2017-05-071, 2017-Ohio-9090, ¶ 7. *See also State v.*

*Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10; *State v.*

*Smith*, 4th Dist. Pickaway No. 19CA33, 2021-Ohio-2866, ¶ 103. This Court

recently explained in *State v. Smith* that R.C. 2953.08(G)(2) provides that an

appellate court may increase, reduce, modify, or vacate and remand a challenged

felony sentence if the court clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

*Smith* at ¶ 103.

> [C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the

syllabus (1954). Thus, an appellate court may vacate or modify a sentence if the

court concludes, by clear and convincing evidence, the record does not support the

sentence. *State v. Bowling*, 4th Dist. Jackson No. 19CA2, 2020-Ohio-813, ¶ 6.

{¶16} " ' "[A] sentence is generally not contrary to law if the trial court considered the R.C. 2929.11 purposes and principles of sentencing as well as the R.C. 2929.12 seriousness and recidivism factors, properly applied postrelease control, and imposed a sentence within the statutory range." ' " *State v. Allen*, 4th Dist. Pickaway No. 19CA31, 2021-Ohio-648, ¶ 14, quoting *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 21, in turn quoting *State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 38 (4th Dist.). Furthermore, a trial court is required only to "carefully consider" the factors in R.C. 2929.11 and R.C. 2929.12 when imposing sentence, and is not required to make any "findings" or state "reasons" regarding those considerations. *See State v. Allen*, *supra*, at ¶ 13; *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38; *State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 47. "And on review, 'R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.' " *Allen*, *supra*, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39.

{¶17} In *Motz*, *supra*, the court observed that "[n]umerous other appellate districts that have * * * analyzed a prison sentence imposed upon the revocation of community control have noted the trial court's proper consideration of R.C. 2929.11 and 2929.12 in imposing a sentence." (Citation omitted.) *Motz* at ¶ 38

(listing cases from the first, second, third, sixth, seventh, ninth, tenth and eleventh appellate districts). The *Motz* court further noted that "precedent from the Ohio Supreme Court suggests that R.C. 2929.11 and R.C. 2929.12 are relevant considerations for a trial court imposing a sentence on a community control violation. *Id.* at ¶ 39 (stating that trial courts, rather than looking at the community control violation in a vacuum, are given great discretion in imposing sentence and are not required to automatically impose the sentence warned of at the initial sentencing), citing *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 20. *Motz* also stated that

> When imposing a prison sentence on a violation, the supreme court has stated that the trial court must 'consider both the seriousness of the original offense leading to the imposition of community control and the gravity of the community control violation.'

*Motz* at ¶ 40, quoting *Brooks* at ¶ 20. *See also State v. Evans*, 5th Dist. Licking No. 2020CA00078, 2021-Ohio-590, ¶ 11 ("If the conditions of community control are violated, R.C. 2929.15(B) provides the trial court with a great deal of latitude in sentencing the offender. R.C. 2929.15(B) requires the court to consider both the seriousness of the original offense leading up to the imposition of community control and the gravity of the community control violation").

{¶18} Thus, in summary, a trial court's decision to revoke community control is reviewed for an abuse of discretion, and in making its determination, a

trial court can take into consideration the nature of the community control violation at issue, the manner in which the condition was violated, as well as any other relevant circumstances in the case.  Further, trial courts are granted much greater latitude and discretion in their decision making when the violation is one of substance rather than form.  Additionally, when a trial court determines that community control should be revoked and a prison term should be imposed, a trial court must consider both the seriousness of the original offense leading to the imposition of community control as well as the gravity of the community control violation.  Finally, in imposing a prison sentence for a violation of community control, trial courts should consider the principles and purposes of felony sentences, should balance the seriousness and recidivism factors found in R.C. 2929.11 and R.C. 2929.12, and then should impose a prison term within the statutory range for the underlying offense, which the defendant was advised during his or her initial sentencing hearing.

{¶19} Here, Mehl admitted to violating what was clearly a substantive rehabilitative requirement of his community control and thus the trial court was within its discretion to revoke Mehl's community control.  Although Mehl argues that the revocation of community control punishes the failure to comply with the terms and conditions of community control and not the specific conduct that led to the revocation, it is clear that trial courts must take into consideration a multitude

of factors when making the determination whether to revoke community control and thereafter, how to sentence. Thus, in our view, although the purpose of revocation may not be to punish the specific conduct that led to the revocation, trial courts must necessarily consider the conduct that led to the revocation, as they are considering the nature of the violation and the manner in which the condition was violated. Trial courts must also consider the underlying original offense as they are crafting the appropriate sentence because if it is determined that a prison term is required, the range of terms available is directly tied to the underlying offense. Furthermore, the trial court's balancing of the seriousness and recidivism factors necessarily includes consideration of an offender's likelihood of recidivism, which obviously requires the trial court consider an offender's prior history and conduct, as well as his amenability to rehabilitation.

{¶20} In this case, there is no dispute that Mehl's sentences were within the statutory range for his underlying convictions. Mehl's underlying convictions consisted of burglary, a second-degree felony in violation of R.C. 2911.12(A)(2), identified in case no. 16CR0452, and aggravated possession of drugs, a fifth-degree felony in violation of R.C. 2925.11(A), identified in case no. 20CR0037. Mehl was sentenced to primary five-year terms of community control in each case and the record indicates that Mehl was advised during his sentencing hearings that a violation of community control could result in the imposition of a four-year

prison term in case no. 16CR0452 and imposition of a one-year prison term in case no. 20CR0037. Furthermore, the record demonstrates that the trial court considered the principles and purposes of felony sentencing as elaborated in R.C. 2929.11 and the factors under R.C. 2929.12 during Mehl's sentencing hearing. The court's consideration is demonstrated in both the sentencing transcript and the sentencing entry.

{¶21} A review of the record further indicates that during the sentencing hearing, Mehl informed the trial court that he had never been convicted of trespassing onto Thomas McKee's property or receiving stolen property, despite those offenses being alleged as previous community control violations. The trial court acknowledged that the State had alleged such conduct in a prior notice of violation that was filed, but that Mehl had not been convicted of those offenses, explaining as follows:

> So I take that for what it's worth. I don't take those as convictions. Just mirrors allegations that you are failing to abide by the law and getting into trouble is all. So your [sic] not going because of that, they are just indications.

{¶22} Thus, it appears that the trial court considered these allegations in the proper light, noting that Mehl had not actually been convicted of those offenses. Further, as set forth above, community control revocation hearings are not criminal

trials therefore the State was not required to establish these violations with proof beyond a reasonable doubt.

{¶23} Additionally, as set forth above, aside from the two specific allegations that Mehl pointed out did not result in convictions, in case no. 16CR0452 alone the State filed six notices of violation and seven amended notices of violation that alleged 33 separate community control violations. The record indicates that Mehl admitted to 28 of those alleged violations. Moreover, the violations that were admitted by Mehl included failure to enter and successfully complete the "Clearview Detox Program," failure to enter and successfully complete the "Star/SEPTA CF program," failure to enter and successfully complete the "Athens County Prosecutor's Vivitrol Program," failure to enter and complete the "River City CBCF" program and failure to enter and complete the "STAR Community Justice Center" program. The trial court could have revoked Mehl's community control for any single one of these prior violations.

{¶24} Moreover, while on community control for case no. 16CR0452, Mehl was convicted of aggravated possession of drugs in case no. 20CR0037 and was ordered to enter and complete the "STAR Community Justice Center" program. Mehl also admitted to the sole notice of violation filed in that case as well, which alleged he failed to successfully complete the STAR program. Thus, in both of his cases, Mehl admitted that he failed to comply with substantive conditions of his

community control on multiple occasions. As explained above, each and every one of these programs constituted a substantive rehabilitative requirement that was specifically tailored to Mehl's conditions of community control and the violation of any one of these conditions justified the trial court's revocation of his community control and imposition of his underlying prison sentences.

{¶25} Thus, although Mehl contends that the revocation of community control punishes the failure to comply with the terms and conditions of community control, and not the specific conduct that led to the revocation, as we have explained, in determining whether to revoke community control and in determining the appropriate sentence after revoking community control, the trial court was permitted to consider the nature of the community control violations at issue, the manner in which they were violated, as well as any other relevant circumstances in the cases. *State v. Duckett*, *supra*, at ¶ 18-19 (affirming the trial court's revocation of community control which considered, in part, Duckett's previous community control violations which did not result in revocation), citing *State v. Nelson*, *supra*, at ¶ 26. *See also State v. Castner*, *supra*, at ¶ 15. *See also State v. Eischen*, 6th Dist. Lucas No. L-18-1263, 2021-Ohio-23, ¶ 13 (characterizing the defendant's repeated community control violations as a "pattern of willful violation of court orders to avoid the requirements imposed upon him by the court"). Further, the trial court was permitted to consider Mehl's numerous community control

violations, the majority of which were admitted, as well as his utter failure to comply with the substantive conditions of his community control, despite the court's multiple prior attempts to provide opportunities for rehabilitation. Moreover, the trial court properly imposed prison terms within the sentencing range for the underlying offenses at issue after properly considering the principles and purposes of felony sentencing and balancing the seriousness and recidivism factors. Finally, the record reflects that Mehl was advised of the prison terms that could be imposed at his initial sentencing hearings in both cases.

{¶26} Based upon the record before us, we can find no abuse of discretion on the part of the trial court in either its decision to revoke Mehl's community control nor any error in the trial court's imposition of an aggregate four-year prison term. Accordingly, Mehl's sole assignment of error is overruled and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Abele, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**