[Cite as *State v. Sullivan*, 2025-Ohio-4987.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                                 :

    Appellee,                              :                    CASE NO. CA2025-02-011

    - vs -                                       :                    <u>OPINION AND</u>
                                                                         <u>JUDGMENT ENTRY</u>
                                               :                    11/3/2025

CHARLES L. SULLIVAN,                           :

    Appellant.                            :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2022 CR 0068


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.


## **O P I N I O N**


**HENDRICKSON, P.J.**

{¶ 1}   Appellant, Charles L. Sullivan, appeals the decision of the Clermont County Court of Common Pleas revoking his community control and sentencing him to serve 18 months in prison. For the reasons discussed below, we affirm the trial court's decision.

{¶ 2}  On February 22, 2022, Sullivan was indicted on one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree, and one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. The charges in the indictment stemmed from allegations that Sullivan stole more than $1,700 worth of merchandise from Kohls and was found in possession of approximately $2,000 worth of stolen merchandise from Sunglass Hut.

{¶ 3}  On April 11, 2023, Sullivan pled guilty as charged in the indictment. The court ordered a presentence-investigative report and the matter proceeded to sentencing. After a hearing, the court sentenced Sullivan to a two-year term of community control, which included conditions that he avoid the premises of all Kohls and Sunglass Hut stores, refrain from drug and alcohol use, submit to random drug screens, and report to and comply with the directives of the probation department. The court advised Sullivan that the failure to comply with the terms of his community control could result in the revocation of his community control and the imposition of consecutive six- to twelve-month prison terms on each count.

{¶ 4}  On June 13, 2023, Sullivan's probation officer filed an affidavit of community control violation, alleging that Sulivan violated his probation by failing to report as directed and failing to follow the probation department's verbal and written instructions. Sullivan entered an admission to the foregoing violations and, on September 21, 2023, the trial court continued Sullivan on community control.

{¶ 5}  Thereafter, on June 27, 2024, Sullivan's probation officer filed another affidavit of community control violation, alleging that Sullivan had violated his probation by (1) failing to abide by all federal, state, and local laws when he was convicted in Hamilton County Municipal Court for obstructing official business, (2) failing to follow the probation department's verbal or written instructions, (3) testing positive for

methamphetamine and admitting to taking a pill "from the street," and (4) failing to pay the supervision fee of $50 per month. Sullivan admitted to the foregoing violations. On July 16, 2024, the trial court continued Sullivan on community control but added as an additional term of his community control that Sullivan spend six months in jail or attend the STAR Community Justice Program ("STAR Program") if a bed became available sooner. Sullivan stated he began the STAR Program on October 1, 2024.

{¶ 6} On January 10, 2025, Sullivan's probation officer filed a third affidavit of community control violation, alleging that Sullivan had violated his probation by failing to follow his probation officer's verbal or written instructions and that he failed to participate in, and successfully complete, the STAR Program. The affidavit alleged that Sullivan was discharged from the STAR Program after engaging in a physical altercation on January 9, 2025. The court held a hearing regarding the affidavit, during which Sullivan admitted the violations as alleged. As a result, the trial court found Sullivan guilty of the community control violation and continued the matter for sentencing.

{¶ 7} On January 23, 2025, the trial court held a sentencing hearing regarding the community control violation. At the hearing, Sullivan's counsel offered a statement in mitigation and explained Sullivan's altercation at the STAR Program. Counsel stated there was a "provocation with racial slurs" and that "somebody even spit on [Sullivan]," which prompted a fistfight. Counsel claimed that, aside from the physical altercation, Sullivan was doing "fairly well" in the program and had seven weeks remaining. Sullivan also spoke at the hearing, during which he offered the same explanation for the altercation, and apologized for his behavior. Sullivan informed the court that he had made a mistake and "messed up."

{¶ 8} After considering the statements offered on Sullivan's behalf, the court noted that, in addition to the physical altercation, there had been other disruptions during

- 3 -

Sullivan's participation in the STAR Program, including two rule violations for gambling. The trial court also discussed the history of the case, including Sullivan's underlying theft crimes, his overall conduct while in the STAR Program, and his prior community control violations. The court stated it had been "graceful and fair" to Sullivan by providing "flat free breaks" in response to Sullivan's prior community control violations. The court asked Sullivan to explain why he repeatedly violated his community control, to which Sullivan stated, "[i]f I don't get spit on, I would not be in front of you." The court then clarified that it did not "care about STAR," as Sullivan was only in the STAR Program as an "unintended consequence" of his failure to listen to the court. The trial court then reiterated that Sullivan had repeatedly promised to comply with his community control, but they were "back here again," and the court was "not happy about it."

{¶ 9} The court proceeded to revoke Sullivan's community control. In so doing, the trial court specifically referenced the principles and purposes of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12. After considering these statutes and the entirety of record, the trial court sentenced Sullivan to an aggregate prison term of 18 months.[1]

{¶ 10} Sullivan now appeals, raising the following assignment of error for our review:

{¶ 11} THE TRIAL COURT ERRED IN REVOKING APPELLANT'S COMMUNITY CONTROL AND IMPOSING A PRISON TERM.

{¶ 12} Sullivan argues on appeal that the trial court erred when it revoked his community control and imposed a prison term. Specifically, Sullivan contends the trial

---

1. After revoking Sullivan's community control and imposing Sullivan's sentence, the trial court explained to Sullivan that "what happened at STAR wasn't the problem. It's what happened that got you into STAR that was the problem for me. I went to bat for you, and you let me down not once, but twice."

court improperly revoked his community control based upon his prior community control violations, not as punishment for his termination from the STAR Program.

{¶ 13} "[C]ommunity control revocation proceedings are not the same as a criminal trial, and a revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Davis*, 2016-Ohio-879, ¶ 17 (12th Dist.). After finding an offender has violated the terms and conditions of community control, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, provided that the prison term is within the range of prison terms available for the offense for which community control had been imposed and the term does not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing. R.C. 2929.15(B).

{¶ 14} A "trial court has significant discretion in sentencing a defendant for a community control violation, so long as it is consistent with the purposes and principles of sentencing and with notification provided by the trial court when imposing the community control sanctions." *Davis* at ¶ 17; *State v. Brooks*, 2004-Ohio-4746, ¶ 20 (stating that a trial court has "a great deal of latitude in sentencing" an offender for a community control violation). Thus, a trial court's decision revoking community control will not be disturbed on appeal absent an abuse of discretion. *State v. Smith*, 2020-Ohio-3235, ¶ 7 (12th Dist.), citing *State v. Bishop*, 2011-Ohio-3429, ¶ 11 (12th Dist.). An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Id*. "An abuse of discretion implies that a decision is both without a reasonable basis and is clearly wrong." *State v. Lavender*, 2019-Ohio-5352, ¶ 10 (1st Dist.)

{¶ 15} On appeal, Sullivan concedes that completion of the STAR Program was a

term of his community control and that he failed to complete the treatment. This court has previously determined that a trial court does not abuse its discretion by revoking an offender's community control where the violation in question was one over which the offender had control. *State v. Smith*, 2024-Ohio-2854, ¶ 25 (12th Dist.), citing *State v. Noonan*, 2019-Ohio-2960, ¶ 19 (12th Dist.). We have further held that a trial court does not abuse its discretion in revoking community control "when the offender is on notice that successful participation in a particular program is a requirement of the community control and the offender is unsuccessfully discharged from the program." *Smith*, 2020-Ohio-3235, at ¶ 8, citing *State v. Baldwin*, 2016-Ohio-5476, ¶ 10 (12th Dist.).

{¶ 16} Notwithstanding the above, Sullivan argues the trial court abused its discretion by revoking his community control because it improperly "focused on" his prior community control violations instead of his termination from the STAR Program. Sullivan contends that any penalty imposed at the revocation hearing should have been based upon the community control violation at issue, i.e., his termination from the STAR Program, not the prior community control violations for which he was already punished.

{¶ 17} After our review of the record, we conclude the trial court did not abuse its discretion by revoking Sullivan's community control and imposing a prison term. While this court acknowledges the trial court's statement that it did not "care about STAR," the court also stated it was "not happy" Sullivan had violated his community control for the third time, despite the leniency it had shown him in the past. Notwithstanding the court's comments regarding the STAR Program, it is undisputed that it found Sullivan's incompletion of the program to be a violation of the terms of his community control. Although the trial court may have accepted Sullivan's explanation for his early termination from the program, such acceptance does not negate his admitted failure to comply with the terms of his community control. A court's decision to revoke community control for

even minor violations is not an abuse of discretion. *State v. Solomon*, 2019-Ohio-1841, ¶ 21 (11th Dist.), citing *State v. Herald*, 2016-Ohio-7733, ¶ 28 (3rd Dist.) (finding no abuse of discretion where an offender's community control was revoked for his general failure to comply with the terms of community control). Consequently, even if the trial court did not consider Sullivan's termination from the STAR Program to be an egregious or serious violation, the trial court was not unreasonable in revoking his community control as a result.

{¶ 18} Additionally, although Sullivan argues the trial court should have limited its decision to revoke his community control to the conduct underlying his termination from the STAR Program, we disagree. Instead, when deciding to revoke an offender's community control and impose a prison term, "a trial court can take into consideration the nature of the community control violation at issue, the manner in which the condition was violated, as well as any other relevant circumstances in the case." *State v. Osco*, 2025-Ohio-4532, ¶ 32 (11th Dist.), citing *State v. Mehl*, 2022-Ohio-1154, ¶ 18 (4th Dist.). As such, a trial court is not limited to consideration of the specific violation at issue but instead should "take into consideration a multitude of factors when making the determination whether to revoke community control and thereafter, how to sentence." *Mehl* at ¶ 19. This necessarily includes consideration of an offender's criminal history and his likelihood of recidivism in order to impose a sentence consistent with the purposes and principles of sentencing as required by Ohio law. R.C. 2929.11; R.C. 2929.12.

{¶ 19} Considering the above, the trial court was permitted to consider any "relevant circumstances in the case" when deciding to revoke Sullivan's community control and impose a prison term. This includes Sullivan's proven inability to comply with the court's orders, as well as his unexplainable misconduct throughout the case. After our review of the entire record, when deciding to revoke Sullivan's community control, the

court clearly gave more weight to Sullivan's repeated violations of his community control and misconduct than it did to the nature of his termination from the STAR Program. Such weighing of the facts is not unreasonable in this case.

{¶ 20} It is well settled that the privilege of community control rests upon a defendant's compliance with the conditions of community control and any violation of those conditions may properly be used to revoke the privilege. *Smith*, 2020-Ohio-3235, at ¶ 8. The record reflects Sullivan has repeatedly failed to comply with the conditions of his community control, including his unsuccessful completion of the STAR Program, obtaining new criminal charges, using illicit drugs, and failing to report to his probation officer. As such, based upon the facts of this case, we cannot say the trial court was without "a reasonable basis" or "clearly wrong" when revoking Sullivan's community control. Rather, the record supports that Sullivan is unable or unwilling to comply with the terms and conditions of his community control.

{¶ 21} Based upon the above, we see nothing in the record to suggest that Sullivan's violation does not warrant revocation. Therefore, we find it was within the trial court's discretion to find that Sullivan had violated the conditions of his community control, and to revoke his community control sanctions as a result. Finding no merit to any of the arguments raised herein, Sullivan's assignment of error is overruled.

{¶ 22} Judgment affirmed.

PIPER and BYRNE, JJ., concur.

## JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Matthew R. Byrne, Judge